## COMMONWEALTH vs. PATRICK D. O'BRIAN.

Worcester. November 10, 2005. - January 10, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, & SPINA, JJ.

*Homicide. Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions, Voluntariness of statement. *Practice, Criminal,* Capital case, Admissions and confessions, Voluntariness of confession, Instructions to jury.

The Commonwealth met its burden of proving, beyond a reasonable doubt, that the criminal defendant's waiver of his Miranda rights and his subsequent confession were voluntary, where a police detective's statement to the defendant's father, that the detective thought the shooting at issue was an accident and that the defendant might "see the light of day down the road" if he cooperated, did not coerce the defendant into confessing, in that the detective did not promise the defendant a lesser sentence or hold himself out as possessing the authority to enter into a plea with, or reduce the charges for, the defendant; moreover, the defendant's statements subsequent to his confession showed that he did not believe he was going to receive a lesser sentence, and the defendant was an adult of sound mind who had had experience with the legal system previously, who was calm during his short interrogation, and who indicated three times that he understood and waived his Miranda rights. [724-728]

This court declined to apply retrospectively its holding in *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 447-448 (2004), requiring prospectively an instruction concerning the absence of an electronic recording of a criminal defendant's confession or statement if such an unrecorded statement or confession were admitted in evidence and if the defendant requested such an instruction. [728-730]

At a murder trial, the judge did not err in instructing the jury on reasonable doubt, where the judge properly linked the moral certainty language from *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850), with language that lent content to the phrase [730-733]; likewise, the judge did not err in instructing the jury regarding circumstantial evidence and inferences [733].

INDICTMENTS found and returned in the Superior Court Department on October 6, 2000.

A pretrial motion to suppress evidence was heard by *Timothy S. Hillman,* J., and the cases were tried before *Robert A. Mulligan,* J.

*Michael Malkovich* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was charged with the murder of a Worcester nightclub manager, the armed robbery of the nightclub's assistant manager, assault and battery of the assistant manager by means of a dangerous weapon, armed assault with intent to rob (two indictments), intimidation to steal from a depository (two indictments), breaking and entering at nighttime with intent to commit a felony, possession of a sawed-off shotgun, and possession of ammunition without a firearms identification card. In 2002, a Superior Court jury convicted the defendant of all charges except assault and battery of the assistant manager by means of a dangerous weapon. He received concurrent life sentences for the convictions of felony-murder,[1] possession of a sawed-off shotgun, armed robbery, and the intimidation of the assistant manager in order to steal from a depository. In addition, he received concurrent sentences of from eighteen to twenty years for armed assault of the victim and the assistant manager with intent to rob, and for breaking and entering. The judge filed the conviction of possession of ammunition without a firearms identification card, the defendant not objecting.

On appeal, the defendant claims that the trial judge erred in admitting in evidence the defendant's statement to the police, and in various instructions to the jury. In addition, he asks that we grant him a new trial or reduce the murder verdict to murder in the second degree. See G. L. c. 278, § 33E. Because we find no error that warrants a reversal of the defendant's convictions and see no reason to exercise our power pursuant to G. L. c. 278, § 33E, we affirm the defendant's convictions.

*Facts and procedural background.* We recite the facts the jury were warranted in finding, reserving certain details for our discussion of the issues raised.

On May 28, 2000, at approximately 1 A.M., the defendant was being driven home by his father from police custody and "was

---

[1] He was not convicted of murder in the first degree based on deliberate premeditation, a theory on which the Commonwealth also prosecuted.

already planning to do the robbery" at the Worcester nightclub which he had "cas[ed]" and thought about doing for "a couple of months." On that day, the defendant had long "bright yellow" hair. Although the defendant had taken approximately thirty Klonopin pills at approximately 1 A.M. on May 27, 2000, he subsequently had been in police custody for nine to ten hours before his father arrived to drive him home. At home, he went to bed, pretended to sleep, and waited for his father to go to sleep. Sometime before 3:30 A.M. on May 28, 2000, he donned a hat, a bandana (to hide his face), a painter's suit, a turtleneck shirt (to cover his tattoo), and black boots. He took a pistol-grip sawed-off shotgun and a black canvas bag that contained gloves, a radio, wire ties, a knife, and duct tape. He walked from his house to the nightclub, a distance of approximately 1.2 miles. When he got near the building's back door, while in some nearby brush, he loaded the shotgun and, in the process, dropped a shell. He walked into the building through an unlocked door, made a loop inside to see if anyone was around, and then went down some stairs to where the office was located. The victim and the assistant manager were in the office.

Moments after entering the office, the defendant shot the victim and then leaned over him, screaming his name and demanding that he open the safe. When the defendant did not receive a comprehensible response,[2] he turned to the assistant manager and demanded the combination, which she did not know. He took the assistant manager's handbag and her car keys. He asked her what kind of car she drove, its color, and where it was parked. He then stole the vehicle, a Jeep Cherokee, and drove it to a street near his house. He abandoned the vehicle and walked to another nearby street; he took all his clothes off except his underwear and threw them into a catch basin. He also threw everything else he had, including the shotgun, the purse, and the keys, into the basin.

The defendant then walked home. He searched through his house looking for his mother's medications. He found them and took them all. His father found him unconscious, with his eyes

---

[2]At trial the assistant manager testified that the victim's only words were "The keys were on the desk."

open, at approximately 7 A.M. on May 28, 2000. The defendant was rushed to a hospital.

In the meantime, the nightclub assistant manager had telephoned 911. She was not able to identify the perpetrator because he had a bandana over his face. The victim died of a shotgun wound to the chest. At trial, counsel stipulated that the shot was fired at close range.

The police recovered all items the defendant disposed of, as well as the Jeep, in the course of their investigation.[3] The police also recovered a shell casing in the office, and shells on the stairs leading to the office and outside in the brush. After the police found the vehicle and items in the catch basin, they suspected that the defendant was involved. He was arrested on a default warrant (unrelated to the murder) at his house on June 6, 2000. On the day of his arrest, he had short brown hair (instead of long yellow hair) and denied any involvement in the homicide to Worcester detectives. The defendant remained in jail, and the police continued their investigation.[4]

On June 9, 2000, a Worcester detective contacted the defendant's father and asked him to come to the station to give a statement concerning the defendant's whereabouts on the morning of the murder. After taking the statement, the detective told the father that the defendant was the prime suspect in the homicide because the police had found the stolen Jeep and items in a catch basin near the defendant's house. The father also was told that a witness had seen someone matching the defendant's description running up the front stairs to his house at approximately 4 A.M. on the morning of the murder. The detective also told the father that the shooting could have been an accident. He testified that he told the father that because the assistant manager had said that the shooter asked the victim for the combination to the safe only after the victim was mortally

---

[3]The record does not indicate whether a bandana was recovered.

[4]At trial, the jury were not aware that the defendant was arrested on a default warrant and was in custody after June 6, 2000 (discussed *infra*). At some point, they were informed that the defendant had been in police custody for several hours before the murder, until his father picked him up at the police station (see *supra*), but were instructed not to speculate about the reasons he was in custody and to consider the fact only for the purpose of determining the defendant's sobriety at the time.

wounded and lying on the floor, the detective thought this sequence of events made no logical sense.[5] The detective also stated that if the defendant cooperated and told the truth, including whether others were involved, he would communicate that to the district attorney and the defendant "may see the light of day down the road."

The next day, the father related this conversation to the defendant, who asked his father to have the police speak to him. Later that evening, the defendant met with two detectives who took his statement, which contained most of the information discussed *supra.*

The defendant filed a motion to suppress his statement to the police, which was denied. At trial, over objection, a redacted version of the statement was read to the jury and counsel stipulated that the defendant was not under the influence of alcohol or drugs at the time he gave his confession. The defendant did not testify at trial. His defenses were that the shooting was an accident, and his expert testified that due to various mental disorders stemming from emotional and sexual abuse in his childhood, he was incapable of forming the requisite intent to commit the crimes. He also claimed that his statement to the police was not voluntary.

*Discussion.* 1. *Miranda waiver and voluntariness issues.* The defendant argues that the Commonwealth did not meet its burden to prove, beyond a reasonable doubt, that the defendant's waiver of his Miranda rights and his subsequent confession were voluntary. He argues, among other things, that he confessed only after a detective told his father that he (the detective) thought the shooting was an accident and that the defendant would receive some leniency if he confessed.

"The Commonwealth bears the burden of proving beyond a reasonable doubt, in the totality of the circumstances, that a defendant's [Miranda] waiver was voluntary, knowing and intelligent, and that his statements were voluntary." *Commonwealth* v. *Auclair,* 444 Mass. 348, 353 (2005), citing *Commonwealth* v. *Jackson,* 432 Mass. 82, 85-86 (2000). "Absent clear error, we accept a motion judge's findings of fact, . . . and a finding of

---

[5]In his confession to police, the defendant stated that the victim panicked and grabbed the gun, which went off.

voluntary waiver is given substantial deference" (citations omitted). *Commonwealth* v. *Auclair, supra.* In looking at the totality of the circumstances to determine the voluntariness of a statement, the judge may consider, among other things, "promises or other inducements, . . . the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation." *Commonwealth* v. *Magee*, 423 Mass. 381, 388 (1996), quoting *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995).

"An officer may suggest broadly that it would be better for a suspect to tell the truth, may indicate that the person's cooperation would be brought to the attention of the public officials or others involved, or may state in general terms that cooperation has been considered favorably by the courts in the past. What is prohibited, if a confession is to stand, is an assurance, express or implied, that it will aid the defense or result in a lesser sentence." (Footnotes omitted.) *Commonwealth* v. *Meehan*, 377 Mass. 552, 564 (1979), cert. dismissed, 445 U.S. 39 (1980). See *Commonwealth* v. *Jordan*, 439 Mass. 47, 53 (2003), citing *Commonwealth* v. *Meehan, supra* at 564 ("The touchstone is whether the police 'assured' the defendant that his confession would aid his defense or result in a lesser sentence").

It is undisputed that, when he spoke to the father, the detective stated that the shooting could have been an accident and that if the defendant cooperated, the detective would bring it to the attention of the district attorney and that the defendant "may see the light of day down the road." What is contested is whether there was an assurance of leniency.

In his affidavit in support of his motion to suppress his statement to the police, the defendant stated that during his first interview on June 6, 2000, the police told him, "If you confess, it will be a manslaughter charge." The defendant also averred that, when he asked to telephone an attorney, the police provided him with a telephone and telephone book, but told the defendant that if he made the call "all deals are off the table."[6] In addition, the defendant's father testified that when he spoke to the

---

[6]At the motion hearing there was conflicting testimony from witnesses whether the defendant actually made a telephone call to an attorney. The defendant had been advised of his Miranda rights prior to his interview with

detective on June 9, 2000, the detective told him that the police had offered the defendant a manslaughter charge but that the defendant would not take it.

At a hearing on the motion to suppress, Worcester detectives denied offering a deal or reduction in the crime charged to the defendant either at the June 6 interview or in the conversation with the father. In addition, the Commonwealth called a correction officer who had known the defendant in high school and who saw the defendant at the jail. He testified that he saw the defendant the night he confessed. The next morning he asked the defendant where he had been coming from the night before. The defendant stated that he had confessed to a murder, that he "was going to get life," that the police had evidence, and that "other people were going to be blamed." The Commonwealth also offered some of the statements that the defendant made in telephone conversations recorded at the jail after his confession. In those conversations, the defendant explained that he was "never getting out," because he had committed a murder during a robbery.

In crediting the Commonwealth's version of the statements made to the defendant and the father, the motion judge especially credited the testimony of the correction officer and the content of the defendant's telephone conversations, finding that they "evidenced the defendant's state of mind that he was facing life imprisonment, and not the lesser charge of manslaughter." We accept a judge's resolution of conflicting testimony. *Commonwealth* v. *Ortiz*, 435 Mass. 569, 577-578 (2002), citing *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). See *Commonwealth* v. *Jordan, supra* at 53 (defendant's state of mind at time of confession confirmed by his later statements).

The defendant argues that, in any event, the detective's undisputed statement to the father that the defendant "may see the light of day down the road" implied that he would receive a lenient sentence, and the detective's statement that the shooting was an accident was an attempt to minimize the crime.[7] Citing *Commonwealth* v. *DiGiambattista*, 442 Mass. 423 (2004), the

police and questioning ceased after he requested an attorney.

[7] In his motion to suppress, the defendant made no argument concerning the

defendant argues that these statements induced the defendant to confess rather than seek legal advice. *Id.* at 433-434, 439 (combination of false statement of evidence and implied promise of leniency rendered defendant's confession involuntary).

The "light of day" comment was prefaced by the word "may" and was stated to the father in the context of the police bringing the defendant's cooperation to the attention of the district attorney's office. The motion judge did not err in finding that the statement did not coerce the defendant into confessing because the detective did not promise a lesser sentence and did not hold himself out as possessing the authority to enter into a plea with, or reduce the charges for, the defendant. *Commonwealth* v. *Jordan, supra* at 52-53, and cases cited. *Commonwealth* v. *Meehan, supra* at 564.

The defendant did not raise, and the motion judge did not discuss, the statement about the shooting being an accident, although the undisputed testimony was presented at the motion hearing. Minimizing a crime implies leniency. *Commonwealth* v. *DiGiambattista, supra* at 436. However, minimizing a crime alone does not render a statement involuntary; it must be considered as a factor in the totality of the circumstances. *Id.* at 438-439. We assume, without deciding, that this statement was a minimization of the crime.[8] Here, the minimization was not combined with any false statement concerning the evidence or the strength of the Commonwealth's case, and the detective "stopped short of making an assurance" regarding the benefits of confessing. *Commonwealth* v. *Scoggins*, 439 Mass. 571, 577 (2003). Cf. *Commonwealth* v. *DiGiambattista, supra* at 433-434, 436, 439-440 (officers lied about evidence and minimized crime by calling it "understandable, justifiable, excusable . . . not that serious" and resolvable through counselling). In addition to finding that the defendant's subsequent statements showed that he did not believe he was going to receive a lesser sentence, the judge found that the defendant was twenty-five

detective's statement that the shooting was an accident. He argued that the police offered leniency and that they were harassing his family.

[8]The Commonwealth argues that this statement could be a plausible view of the facts, given that the assistant manager stated that the defendant shot the victim before he asked him to open the safe.

years old at the time of his statement, had experience with the legal system, was of sound mind, was calm, and was interrogated for only two and one-half hours. The motion judge further found that the defendant indicated three times that he understood and waived, both orally and in writing, his Miranda rights. We see no reason to disturb the motion judge's conclusion, based on a consideration of the totality of the circumstances and fully supported in the record, that the defendant's waiver of his Miranda rights was knowing, voluntary, and intelligent and that his statement to the police was voluntary.[9]

2. *Absence of electronic recording of defendant's statement.* The defendant argues that the judge's denial, over his objection, of his request for an instruction to the jury concerning the absence of an electronic recording of the defendant's statement was highly prejudicial and limited the defendant's ability to challenge the voluntariness of his confession.[10] The judge stated that defense counsel could argue the issue to the jury. There was no abuse of discretion or error of law.

This case was tried before this court's decision in *Commonwealth* v. *DiGiambattista, supra* at 425, 447-448, prospectively to require such an instruction if a defendant's unrecorded confession or statement that is the product of "custodial interrogation" or "an interrogation conducted at a place of detention" is admitted in evidence, and the defendant requests the instruction.[11] See *Commonwealth* v. *Dagley,* 442 Mass. 713, 721 (2004), cert. denied, 544 U.S. 930 (2005). The defendant argues that the rule in the *DiGiambattista* case should, in the circumstances of this case, be applied retroactively. We have

---

[9]At trial, the jury heard essentially the same evidence concerning the circumstances surrounding the defendant's confession as did the motion judge, except for the defendant's statements made during telephone calls from the jail. The judge also instructed the jury on the humane practice rule when the detective and the father testified, and again before the jury retired to deliberate.

[10]The defendant raised this issue in his motion to suppress his statement. The motion judge found that the defendant's rights were not violated because electronic recordings were not mandated and that the record of the defendant's interrogation was reduced to writing, which the defendant signed and initialed.

[11]The jury are to be instructed that this court has expressed a preference that such interrogations be recorded and cautions them to evaluate the unrecorded statement or confession with particular care. *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 447-448 (2004).

rejected such a request and see no reason to revisit the issue. *Commonwealth* v. *Dagley, supra.*

Here, contrary to the defendant's assertion, the judge did not prevent the defendant from placing the issue of the absence of a recording before the jury.[12] The judge explicitly told defense counsel that he was free to argue the issue in closing, which counsel chose not to do. Defense counsel did cross-examine the detective who interviewed the defendant on June 6, the conversation in which the defendant claims the offer of manslaughter occurred,[13] about whether the conversation was recorded, but not the detective to whom the defendant confessed on June 10. See *Commonwealth* v. *Diaz,* 422 Mass. 269, 273 (1996) (defense counsel entitled to pursue issue of absence of

---

[12]As part of this argument, the defendant asserts that the judge compounded the problem by preventing defense counsel from cross-examining the detective who took the defendant's statement of June 10 about the defendant's suicide attempt and about "potentially exculpatory items" that were not in the defendant's statement.

The exchange between the judge and defense counsel was in the context of defense counsel's asking the detective numerous questions solely concerning the effects of the defendant's ingestion of Klonopin the day before the murder and his ingestion of his mother's medication and subsequent hospitalization. The judge first sustained an objection to a question characterizing the defendant's taking his mother's medications as a suicide attempt, but counsel was allowed to ask questions about the ingestion of the pills and whether the police investigated the defendant's subsequent hospitalization. At a subsequent sidebar conference, the judge explicitly told defense counsel that he *could* ask questions, on cross-examination, concerning the inadequacy of the police investigation, but the judge noted that the type of question counsel was asking, i.e., whether the detective asked the defendant something exculpatory, had no bearing on whether the investigation was thorough. At that point, defense counsel continued to question the detective whether he had investigated certain aspects of the defendant's statement that he ingested various pills (Klonopin and his mother's medications).

At the sidebar conference, defense counsel had told the judge that he wanted to explore the fact that in two conversations with the police of some three to four hours, only a short statement resulted. There is nothing in the record indicating that the judge prevented counsel from cross-examining the detective directly whether other conversations with the defendant occurred that were not reduced to writing. In fact, on redirect examination, the prosecutor asked the detective if he had discussed the defendant's conversation with his father.

[13]Defense counsel also questioned the detective who had interviewed the defendant's father whether the conversation was recorded. The father testified that the detective told him that the defendant had been offered manslaughter.

recording). In addition, defense counsel argued voluntariness to the jury, emphasizing that the detective's discussion with the defendant's father was what caused the defendant's confession. Even if defense counsel should have emphasized the lack of a recording of the defendant's confession on June 10, the defendant's argument concerning voluntariness was that he confessed because he expected leniency based on previous discussions with the police that both he and his father had had. However, his statement to the correction officer the morning after the defendant had confessed, in which he said, among other things, that he was going to go to prison for life, clearly shows that the defendant had expected no leniency.

3. *Jury instructions.* The defendant argues that the judge erred in instructing the jury on reasonable doubt, circumstantial evidence, and inferences, the combination of which, he contends, unconstitutionally diminished the level of certainty required for the Commonwealth to establish guilt.

a. *Reasonable doubt.* The defendant claims that when the judge instructed the jury on reasonable doubt, he omitted language from the approved charge set forth in *Commonwealth v. Webster,* 5 Cush. 295, 320 (1850). Some of the language that the defendant states was omitted is not part of the approved instruction.[14] The judge's instruction to the jury on reasonable doubt is as follows:[15]

> "As I said, the burden of proof in a criminal case is upon the Commonwealth. The law never imposes upon a defendant the burden of producing any evidence or calling any witnesses. And the Commonwealth must prove each and every essential element of the charge beyond a reasonable doubt. Because that's a critical proposition in any criminal case, proof beyond a reasonable doubt, there is a

---

[14]The defendant asserts that the judge omitted the following: "Finally, you must be satisfied to a near certainty that the defendant committed the crime. This, and nothing less, is proof beyond a reasonable doubt." However, this language is not part of the approved charge from *Commonwealth* v. *Webster,* 5 Cush. 295, 320 (1850). We have set forth the actual language the judge omitted. See note 16, *infra.*

[15]The language that the judge recited almost verbatim from *Commonwealth* v. *Webster, supra,* is italicized.

definition that was written about a hundred and forty years ago. The language is somewhat stilted. I'd ask you to be attentive as I read it to you. *What is reasonable doubt? The term is often used and probably pretty well understood, but it is not too easily defined. It is not mere possible doubt, because everything relating to human affairs and depending upon evidence is open to some possible or some imaginary doubt. Reasonable doubt is that state of the case when after the entire comparison and consideration of all of the evidence your minds are left in that condition that you cannot say that you feel an abiding conviction to a moral certainty of the truth of the charge. The burden of proof is upon the prosecution. All the presumptions of law independent of evidence are in favor of innocence. And every person is presumed to be innocent until he is proven guilty. If upon such proof there is reasonable doubt remaining, the accused is entitled to the benefit of it by a finding of not guilty. It's not sufficient to establish a probability, even a strong probability that the fact charged is more likely to be true than not true. But the evidence must establish the truth of the charge to a reasonable and moral certainty, a certainty that directs and convinces your understanding and satisfies your reason and your judgment.*[16] All right, what I have just read to you is the definition of proof beyond a reasonable doubt. The Commonwealth must prove each and every essential element of the charge beyond a reasonable doubt before you may find the defendant guilty of the charge. The Commonwealth is not required to prove the case to an absolute certainty. The Commonwealth is not required to prove the case to a mathematical certainty. Mathematical certainty is that level of certainty you'd have if you add ten and ten and arrive at twenty. The Commonwealth is not required to prove the case to an absolute or mathematical certainty, but it must prove each and every element of the charge beyond a reasonable doubt before you may find the defendant guilty of the charge."

There was no error. The issue in a *Webster*-type charge is the

---

[16]The following language from the standard *Webster* charge was omitted: "[The reason and judgment] of those who are bound to act conscientiously upon it. This we take to be proof beyond reasonable doubt." *Commonwealth* v. *Webster, supra.*

moral certainty language, which would constitute reversible error if it were not linked to language that impresses on the jury the high degree of certainty that is required to find the defendant guilty. *Commonwealth* v. *Pinckney*, 419 Mass. 341, 344 (1995). We have stated that the *Webster* charge itself, even though it uses moral certainty language, is acceptable. *Id.* However, a verbatim *Webster* charge is not required. See *Commonwealth* v. *Watkins*, 433 Mass. 539, 547 (2001) (approving "a charge defining reasonable doubt in accordance with the *Webster* model"); *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 568 n.3 (1994), cert. denied, 513 U.S. 1091 (1995), and cases cited ("faithfully tracks [*Webster*] language"). See also *Commonwealth* v. *Riley*, 433 Mass. 266, 271-272 (2001). What is critical is that the moral certainty language be "linked with language that lends content to the phrase." *Commonwealth* v. *Pinckney*, *supra* at 345, citing *Commonwealth* v. *Gagliardi*, *supra* at 571. That was done here.

Like the judge in *Commonwealth* v. *Gagliardi*, *supra*, the judge omitted language from the *Webster* charge that told the jury that absolute certainty was not required. *Commonwealth* v. *Gagliardi*, *supra* at 568 n.3. Here, the judge substituted language concerning mathematical certainty, language we have approved. See, e.g., *Commonwealth* v. *Mack*, 423 Mass. 288, 290-291 (1996). See also *Commonwealth* v. *James*, 424 Mass. 770, 788 (1997), quoting *Commonwealth* v. *Mack*, *supra* at 291 ("we do not require that judges use any particular words to instruct the jury"). There is no evidence that the jury did not "listen attentively to the judge's instructions." *Commonwealth* v. *James*, *supra*. The judge made them stand for a moment[17] just before he read the charge, asked them to listen attentively, and told them that reasonable doubt is a "critical proposition." Moreover, there is no evidence that the jury did not understand the high degree of certainty required to find the defendant guilty. See *id.* Indeed, the jury did not convict the defendant of murder in the first degree on a theory of deliberate premeditation or of assault and battery of the assistant manager by means of a danger-

---

[17]The judge told the jury that in the past juries were required to stand for the entire charge in cases of murder in the first degree to portray the seriousness of the charge and important function of the jury.

ous weapon. Accordingly, there is no " 'reasonable likelihood' that the instruction led the jury to believe that they could convict the defendant on proof insufficient to dispel reasonable doubt." *Commonwealth* v. *Denis*, 442 Mass. 617, 621 (2004), citing *Commonwealth* v. *Pinckney*, *supra* at 342.

b. *Circumstantial evidence and inferences.* The judge denied the defendant's requested jury instruction on circumstantial evidence. The defendant argues that various portions of the instruction the judge gave on circumstantial evidence and inferences are erroneous.

We need not belabor this point because it is unsupported by citation to authority and, therefore, does not rise to the level of appellate argument. We have reviewed the instruction, considering it as a whole, and conclude that there was no error. See *Commonwealth* v. *Sann Than*, 442 Mass. 748, 752 (2004), quoting *Commonwealth* v. *Richardson*, 429 Mass. 182, 185 (1999) (court looks at "the charge as a whole to determine whether it fairly instructs the jury").

4. *General Laws c. 278, § 33E.* We have reviewed the entire record and considered all the defendant's claims of error pursuant to G. L. c. 278, § 33E. We find nothing indicating a substantial likelihood of a miscarriage of justice and see no reason to reduce the murder verdict or order a new trial.

*Judgments affirmed.*