NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11467


COMMONWEALTH  vs.  JOSE HERNANDEZ.



Essex.     November 9, 2018. - January 9, 2019.

Present:  Gants, C.J., Gaziano, Budd, & Cypher, JJ.


Homicide.  Grand Jury.  Evidence, Grand jury proceedings,
     Exculpatory, Cross-examination, Opinion.  Practice,
     Criminal, Capital case, Grand jury proceedings, Dismissal,
     New trial.




Indictment found and returned in the Superior Court
Department on February 3, 2010.

A motion to dismiss was heard by Timothy Q. Feeley, J., the
case was tried before David A. Lowy, J., and a motion for a new
trial, filed on July 27, 2015, was heard by Timothy Q. Feeley,
J.


David H. Mirsky (Joanne T. Petito also present) for the
defendant.
Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.


BUDD, J.  On the evening of June 7, 2009, the defendant,

Jose Hernandez, shot and killed Roberto Plaza as Plaza sat in

his motor vehicle.  The defendant was convicted of murder in the

first degree on a theory of deliberate premeditation in connection with the shooting death. We consolidated his direct appeal with his appeal from the denial of his motion for a new trial. After full consideration of the trial record and the defendant's arguments, we affirm the defendant's conviction and the denial of his motion for a new trial, and we decline to grant extraordinary relief pursuant to G. L. c. 278, § 33E.

Background. We summarize the facts as the jury could have found them, reserving certain details for discussion infra. On the evening of June 7, 2009, the defendant and his friend, Jorge Santiago, were drinking beer and using heroin at the defendant's home in Lawrence. As the defendant was inspecting a firearm that Santiago showed him, the victim knocked at the door, announced himself, and said he wanted to purchase narcotics. Without opening the door, the defendant told the victim to "[g]et away" and to "[c]all [his] workers." The victim persisted, knocking again and stating that the defendant's workers "do not answer the phones." The defendant opened the door and began to argue with the victim.

The victim eventually walked back to his motor vehicle, which was parked in front of the defendant's home, and started the engine. The defendant walked up to the passenger side of the motor vehicle, where the argument continued. The defendant then pulled the handgun from his pocket and fired it into the

vehicle, and then walked away. The victim's motor vehicle thereafter proceeded a short way down the street, left the roadway, knocked down a fence, and crashed into a couple motor vehicles parked in a nearby lot. Neighbors found the victim breathing but unable to respond to questions. He died soon after from a gunshot wound to the chest.

In the meantime, after the shooting, the defendant hid the firearm in a tree stump located in the backyard of a neighboring home and then contacted a friend, Miguel Sierra, who retrieved (and later sold) the firearm and provided the defendant with travel arrangements to Connecticut the next day. In November 2009, the defendant was located and arrested in Connecticut.

Discussion. On appeal, the defendant challenges the denial of his motion to dismiss the indictment and certain evidentiary rulings by the trial judge. He also appeals from the denial of his motion for a new trial based on newly discovered and improperly withheld evidence. Finally, the defendant asks this court to reduce the verdict to manslaughter pursuant to our authority under G. L. c. 278, § 33E.

1. Grand jury presentment. Three days after the victim was killed, a confidential informant advised police that an individual claimed that he was "putting a hit out" on the victim because the victim previously had failed to pay for heroin that the individual had provided to the victim. The confidential

informant further reported that the day after the shooting, when the informant asked the individual about the "hit," the individual told the informant, "[D]on't worry about [it], I already had it taken care of."

The defendant argues that the information from the confidential informant should have been presented to the grand jury as exculpatory evidence that raised a "fundamental doubt as to the credibility of the prosecution's entire case" against the defendant, and that therefore his motion to dismiss the indictment was improperly denied.  We disagree.

It is well settled that "[p]rosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury."  Commonwealth v. McGahee, 393 Mass. 743, 746 (1985), citing Commonwealth v. O'Dell, 392 Mass. 445, 447 (1985).  "It is only when the prosecutor possesses exculpatory evidence that would greatly undermine either the credibility of an important witness or evidence likely to affect the grand jury's decision, or withholds exculpatory evidence causing the presentation to be 'so seriously tainted,' that the prosecutor must present such evidence to the grand jury."  Commonwealth v. Wilcox, 437 Mass. 33, 37 (2002), quoting O'Dell, supra.

The defendant has made no such showing here.  The informant's uncorroborated statement about another individual putting a "hit" out on the victim did not affect the credibility

of the testimony of any of the grand jury witnesses.  This includes Santiago, who testified before the grand jury about the argument between the defendant and the victim just prior to the shooting, and further testified that he witnessed the defendant point the firearm at the motor vehicle where the victim was sitting, and shoot.  Given this evidence, the omission of the informant's statement cannot be said to have affected the grand jury's decision to indict the defendant in this case.[1,2]  See Commonwealth v. Buckley, 410 Mass. 209, 220-221 (1991).

2.  Limits on cross-examination.  Both the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant's right to confront the witnesses against him or her through cross-examination.  Commonwealth v. Miles, 420 Mass. 67, 71 (1995), and cases cited.  The defendant argues that the judge improperly curtailed his cross-examination of Sierra, thereby denying him the ability to demonstrate to the jury the witness's true motivation for testifying against the defendant, i.e., that

---

[1] Even if such a statement was made to the confidential informant, it would not have necessarily exculpated the defendant, as the statement would not have been inconsistent with the defendant having been the one who performed the "hit."

[2] We note that the defendant chose not to present this evidence at trial, opting instead to claim self-defense.  This strategy made sense given the strength of the evidence that the defendant was the shooter.

in exchange Sierra would receive a "deal" on then-pending charges. Contrary to his assertion, the defendant had ample opportunity to explore fully Sierra's motivation to cooperate with the government through both cross- and recross-examination.

On direct examination, Sierra acknowledged that he was cooperating with the Commonwealth in exchange for a "deal" on two drug charges. During cross-examination, trial counsel explored thoroughly the particulars of the cooperation agreement -- that is, in exchange for testifying, Sierra received a prison sentence of from two and one-half to three years on a drug charge from 2008 and expected to receive a probation sentence of five years on a pending drug charge from 2009.[3] Sierra also conceded on cross-examination that he came forward to cooperate only after he had been charged in a second drug case, and that he expected to receive immunity for the assistance he gave the defendant after the shooting. The initial cross-examination began and ended with Sierra acknowledging all of the particulars of the "deal."

On redirect examination, the Commonwealth sought to minimize the significance of the benefits Sierra was to receive by asking if there were other reasons why he was testifying at trial. Sierra responded: "The only reason I'm testifying is

---

[3] Both charges carried a five-year mandatory minimum prison sentence that could have been imposed consecutively.

because I want his family to know what really happened to this
kid, because I don't think they know what really happened
. . . ."[4]

On recross-examination the defendant sought to reemphasize
the "deal" in an attempt to establish it as the "real reason"
Sierra was testifying.  Although the defendant contends that,
during his recross-examination, the judge improperly precluded
him from demonstrating Sierra's bias by sustaining the
Commonwealth's objections, we are hard pressed to understand the
concerns he raises.  The Commonwealth's first two objections
were to questions that had been asked and answered previously

---

[4] Miguel Sierra initially responded, "The main reason is
that they said the family, they stab me in the back."  Trial
counsel objected to the response, and the judge held a voir
dire.  When asked during the voir dire why he was testifying,
Sierra responded:  "I just want this family to know what really
happened to their son and I want them to know I've got nothing
to do with their son's death.  It's my biggest concern.  That's
what I want to say."  The judge allowed the question and answer.
Any error resulting from the judge's failure to rule on the
defendant's objection to Sierra's initial answer does not amount
to a substantial likelihood of a miscarriage of justice, let
alone prejudicial error.  See Commonwealth v. Martinez, 431
Mass. 168, 173 (2000) (we review testimony objected to at trial
for prejudicial error); Commonwealth v. Garcia, 379 Mass. 422,
439 (1980) ("In the absence of an objection and exception,
although this court may still find reversible error under G. L.
c. 278, § 33E, it will do so only 'upon a showing of grave
prejudice or substantial likelihood that a miscarriage of
justice has occurred'").  Sierra's initial statement had to do
with his motive for testifying apart from the "deal," which is
permissible for a party to elicit during questioning.  See
Commonwealth v. Allison, 434 Mass. 670, 682-683 (2001) (not
error to allow witness's answer because prosecutor's question
was directed at witness's motive for testifying).

and had nothing to do with Sierra's motivation to cooperate with the government.[5]  The judge was well within his discretion to limit repetitive questions.  See Commonwealth v. Watson, 377 Mass. 814, 837 (1979) ("A judge certainly has wide discretion to limit repetitive or redundant cross-examination, and there was no showing that the judge's action on these matters unfairly impaired the defendant's right of cross-examination").

The remaining two objections were to questions regarding the timing of Sierra's decision to come forward to cooperate and his reason for doing so.  The objections properly were sustained based on the characterization of the cooperation agreement as "the deal of a lifetime" and a "huge break."  See Commonwealth v. O'Brian, 445 Mass. 720, 729 n.12, cert. denied, 549 U.S. 898 (2006).  However, the defendant was permitted to rephrase the questions and was not precluded from eliciting from Sierra that he came forward with information about the shooting in order to get a deal from the government.  There was no error.

3.  Lay opinion testimony.  At trial the defendant asserted that he killed the victim in self-defense.  The defendant sought to demonstrate that the reason for the victim's behavior was

_____

[5] Trial counsel asked Sierra to reconfirm that he was not present at the time of the shooting, and that he sold the firearm used in the shooting.  The objection to the second question was sustained further as being beyond the scope of the redirect examination.  See Commonwealth v. O'Brien, 419 Mass. 470, 476 (1995).

that the victim was in need of heroin and the defendant would not provide him with any.  On cross-examination of Santiago, the judge sustained objections to general questions posed to Santiago about what happens when one is "coming down" from a heroin high.  The defendant now argues that he was denied a meaningful opportunity to present a complete defense because the judge curtailed testimony from Santiago regarding the reason for the victim's behavior.  We disagree.

A lay opinion is admissible only where it is (a) rationally based on the witness's perception; (b) helpful to a clear understanding of the witness's testimony or in determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.  Mass. G. Evid. § 701 (2018).  See Commonwealth v. Canty, 466 Mass. 535, 541 (2013).  Here, the judge was careful to ensure that Santiago, a lay witness, did not answer general questions about how a person reacts when suffering from heroin withdrawal, as such testimony would

require specialized knowledge.[6,7]  As the judge properly precluded a lay witness from testifying as an expert, there was no error and no abuse of discretion.  See e.g., Commonwealth v. Sliech-Brodeur, 457 Mass. 300, 330 (2010) (error to allow lay witnesses to testify to whether defendant showed "overt signs of a mental illness" because such witnesses were not qualified as experts).

4.  Motion for new trial.  At trial, chemist Erik Koester testified as the crime scene supervisor.  He testified that at the scene he inspected the outside of the vehicle and searched the surrounding area.  He also testified regarding gunshot residue on the victim's clothes.  Prior to oral argument on the defendant's direct appeal, the defendant's appellate counsel became aware that Koester had work-related performance issues on

---

[6] We are generally wary of lay opinion regarding the behavioral effects of intoxicants.  See, e.g., Commonwealth v. Canty, 466 Mass. 535, 544 (2013) (police officer may not offer opinion on whether defendant was operating motor vehicle while under influence of alcohol or whether ability to operate motor vehicle safely was diminished due to alcohol); Mass. G. Evid. § 702 (2018).  Contrast Commonwealth v. Finstein, 426 Mass. 200, 203 (1997) (psychiatrist testified that inability to control impulses not typical of heroin withdrawal); Commonwealth v. Fielding, 371 Mass. 97, 110-111 & nn.18-19 (1976) (physicians testified at length describing symptoms and signs of withdrawal from heroin).

[7] The judge did, however, allow trial counsel to elicit from Santiago testimony regarding his own experience with heroin and whether he recognized similar characteristics in the victim's behavior prior to the shooting.

his record and had since resigned from the State police crime laboratory (crime lab). Oral argument was postponed to allow the defendant to file a motion for a new trial based on this information. The motion was remanded to the Superior Court, where it was denied after a nonevidentiary hearing. The defendant now argues that the motion was improperly denied because the information on Koester's performance deficiencies raises doubts as to the accuracy and reliability of the evidence collection in his case.

A judge "may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). We only disturb the denial of a motion for a new trial where there has been a "significant error of law or other abuse of discretion." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). As the motion judge was not the trial judge,[8] and as the motion judge conducted a nonevidentiary hearing, we are in "as good a position as the motion judge to assess the trial record" (citation omitted). Commonwealth v. Phinney, 446 Mass. 155, 158 (2006), S.C., 448 Mass. 621 (2007). We conclude that although information regarding Koester's failed proficiency tests should have been

_____

[8] A Superior Court judge who was not the trial judge decided the motion because the trial judge had since been appointed to this court.

disclosed as exculpatory evidence, the motion judge did not abuse his discretion in denying the motion for a new trial.

a. Nondisclosure of exculpatory evidence. The trial in this case began on March 21, 2012. On March 9, 2012, Koester was informed that the "satisfactory" result he had previously received on his 2011 crime scene proficiency test had been rescinded and that instead he received an "unsatisfactory" result due to his method of measuring blood spatter. On March 15, 2012, a member of the crime lab quality assurance management section was informed that Koester received "unsatisfactory" results on his 2010 crime scene proficiency test, also as a result of improperly measured blood spatter evidence. This information was not disclosed to the defense prior to trial.

This court had occasion to consider the implications of failing to disclose Koester's performance deficiencies to the defense in another case in which Koester was involved. See Commonwealth v. Sullivan, 478 Mass. 369 (2017). In Sullivan, we concluded that, because the information possessed by the prosecution at the time of trial could have been used to impeach Koester, it was exculpatory and should have been disclosed to the defense prior to trial. Id. at 380-381. The same is true for those performance deficiencies known at the time of Hernandez's trial. See id. at 380, citing Commonwealth v. Martin, 427 Mass. 816, 823-824 (1998) (Commonwealth has duty to

disclose exculpatory evidence possessed by prosecution team, including information in possession of State police crime laboratory chemists who participate in case).[9]  See also United States v. Agurs, 427 U.S. 97, 107 (1976) (government's constitutional obligation to disclose such evidence applies even if defendant did not request it).  Notwithstanding the motion judge's ruling to the contrary,[10] "[e]vidence tending to impeach an expert witness for incompetence or lack of reliability falls within the ambit of the Commonwealth's obligations under Brady." Sullivan, 478 Mass. at 381.  See Brady v. Maryland, 373 U.S. 83, 87-88 (1963).

In addition, after the trial it was determined that Koester had failed a trace evidence proficiency test that he took in 2011.[11]  Because this information concerned an event that occurred prior to trial, but was discovered posttrial, it may

---

[9] We note that although Erik Koester's supervisors had been made aware of his 2010 test results prior to trial, Koester himself was not informed until after the trial had concluded. We have not opined on whether the duty to disclose exculpatory evidence extends to supervisors of chemists on the prosecution team; however, the Commonwealth concedes this point.

[10] The motion judge determined that because Koester testified to only factual events, the evidence of his work performance would not have been admissible for impeachment purposes.

[11] The initial satisfactory result was rescinded after the defendant's trial had taken place, and Koester instead received an unsatisfactory result.

fairly be considered as newly available evidence. See <u>Grace</u>, 397 Mass. at 306 (newly discovered evidence must have been unknown to defense and not reasonably discoverable at time of trial). However, as discussed <u>infra</u>, none of the evidence of Koester's performance deficiencies warrants granting a new trial.[12]

b. <u>Effect of nondisclosure</u>. Even if evidence is exculpatory, a defendant seeking a new trial must still establish prejudice. <u>Commonwealth</u> v. <u>Murray</u>, 461 Mass. 10, 20-21 (2011). Here, because the defendant did not specifically request information relating to Koester's work performance, we view the undisclosed evidence and the newly available evidence under the same prejudice standard, that is, "whether there is a substantial risk that the jury would have reached a different

---

[12] The bulk of the evidence upon which the defendant relied in his motion for a new trial concerned failed proficiency tests and other performance-related incidents that took place after the defendant's conviction. Because the events themselves occurred posttrial, they do not qualify as newly discovered evidence. Accord <u>Commonwealth</u> v. <u>Stewart</u>, 422 Mass. 385, 389 (1996) (posttrial polygraph results not newly discovered evidence for purposes of new trial motion). See <u>Commonwealth</u> v. <u>Freeman</u>, 442 Mass. 779, 790 (2004) (posttrial plea agreements with prosecution witnesses not newly discovered evidence). Cf. Reporters' Notes (1973) to Rule 60, Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 1255 (LexisNexis 2018) ("It is . . . settled practice that the phrase 'newly discovered evidence' refers to evidence in existence at the time of trial but of which the moving party was excusably ignorant").

conclusion if the evidence had been admitted at trial." Id. at 21, quoting Commonwealth v. Tucceri, 412 Mass. 401, 413 (1992).

We conclude, as we did in Sullivan, 478 Mass. at 382-383, that the motion judge did not abuse his discretion in denying the defendant's motion for a new trial because the new evidence would not have been "a real factor in the jury's deliberations." Grace, 397 Mass. at 306, citing Davis v. Boston Elevated Ry., 235 Mass. 482, 495-496 (1920).

The defendant testified that he shot the victim in self-defense when he saw the victim reach for something shiny that the defendant believed was a gun. The prosecution presented evidence that the only items found in the motor vehicle in which the victim sat were a steering wheel locking device, a baseball hat, a cigarette lighter, a cellular telephone, and a twenty dollar bill, and argued that none of these items could have been mistaken for a firearm.

In his motion for a new trial, the defendant claimed that the Commonwealth used Koester to bolster generally the credibility of the investigation and that the Koester deficiency evidence could have been used to raise doubts as to the thoroughness of the search of the vehicle. This argument fails. First, although Koester was involved in the investigation, he neither searched the motor vehicle at the scene nor participated in the more thorough search that took place at the tow yard. In

fact, his participation in the investigation at the crime scene yielded nothing of evidentiary value. Further, although Koester was present at the crime scene in a supervisory role, he supervised other crime scene analysts, not the police sergeant who searched the vehicle at the scene. Koester's only substantive testimony at trial pertained to the gunshot residue recovered on the victim's clothes, an issue that was ultimately made moot by the defendant's own admission that he shot the victim.

At trial, the defendant sought to demonstrate through cross-examination, and argued at closing, that investigators failed to conduct a comprehensive search of the victim's vehicle. In his motion for a new trial, although the defendant attempted to connect Koester's performance issues with the thoroughness of the investigation, because Koester was not involved in the search of the motor vehicle, the evidence of his performance issues had no bearing on the Bowden defense that the defendant raised. See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980) (inadequacy of police investigation is permissible ground for defense).

As the evidence regarding Koester's competence could have been introduced only to impeach him, its absence does not rise to the level of prejudice entitling the defendant to a new trial. See Sullivan, 478 Mass. at 383, quoting Commonwealth v.

Lo, 428 Mass. 45, 53 (1998) ("Newly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial"). The motion judge did not abuse his discretion in denying the defendant's motion.

5. Review under G. L. c. 278, § 33E. Finally, the defendant asks us to exercise our extraordinary power to grant relief under G. L. c. 278, § 33E. We have reviewed the record in its entirety and see no basis to set aside or reduce the verdict of murder in the first degree.

Conclusion. The judgment is affirmed. The order denying the motion for a new trial is also affirmed.

So ordered.