NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-550

COMMONWEALTH

vs.

PHILIP G. CARTER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a District Court bench trial, the defendant was convicted of breaking and entering a building at night, G. L. c. 266, § 16.  On appeal, he claims that the evidence at trial was insufficient to identify him as the perpetrator and that misstatements in the prosecutor's closing argument created a substantial risk of a miscarriage of justice.  The defendant also appeals from the order denying his motion for a new trial, claiming that the Commonwealth withheld potentially exculpatory evidence.  We affirm.

1.  Identity of perpetrator.  The defendant contends that the judge erred in denying his motion for a required finding of not guilty because the evidence failed to establish his identity as the perpetrator of the crimes.  Just prior to trial, the defendant's codefendant -- his brother -- pleaded guilty to the

same breaking and entering. The Commonwealth's theory at the defendant's trial was that he was a joint venturer, aiding and abetting his brother in the breaking and entering. The aiding and abetting consisted of the defendant driving a pickup truck to the scene, which allowed his brother to take away items stolen from the victim's home. On appeal, the defendant does not dispute that the driver of the pickup truck was an accomplice to the crime; rather, he maintains that the evidence was insufficient to establish that he was in fact the driver of the truck.

In reviewing the denial of a motion for a required finding of not guilty, we consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Commonwealth v. Scott, 464 Mass. 355, 360 (2013). An essential element to be proven in any case is the identity of the defendant as the perpetrator of the crime charged. See Commonwealth v. Farley, 443 Mass. 740, 745-746 (2005). Proof of identity may be established in a number of ways, including through circumstantial evidence. See Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019). A fact finder is entitled to draw reasonable inferences from the evidence. See Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010). Where conflicting inferences are possible, it is for the fact finder to determine where the truth lies because

2

the weight and credibility of the evidence is wholly within the province of the fact finder.  See Commonwealth v. Platt, 440 Mass. 396, 401 (2003).

Examining the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the judge could have found the following facts.  On the evening of July 21, 2019, the victim returned from vacation to find that his home had been broken into and ransacked.  Among the many items missing from his home, the victim identified cash taken from his bedroom, "maybe 9 or 10 $100 bills" and "two $2 bills on a single sheet that had not been cut," as well as his passport.

Video from the victim's home security camera showed a pickup truck driving slowly by at about 3:45 A.M. and stopping at his house.  About five minutes later, an individual walked across the grass and got into the truck before it drove away. The same individual appeared again at about 6:30 A.M., this time walking across the grass while talking on a cell phone.  About twenty minutes later, the pickup truck drove by again.[1]

The following day, at about 7:00 A.M., police were dispatched to a Dunkin' Donuts for a disturbance involving a

---

[1] Although there was no formal identification at trial, everyone seemed to agree that the individual in the video was the defendant's brother.

3

pickup truck.[2]  The police stopped the pickup truck and approached.  The defendant was in the driver's seat and his brother was in the front passenger seat.  Both were sweaty with "pinpoint" pupils.  The police observed duffle bags, backpacks, and other containers in the truck bed.  When asked about the items in the truck bed, both the defendant and his brother stated that they had been helping a friend with moving and had just stopped to take a break and get coffee.  When the police asked the defendant to step out of the truck, he drove off, leading the police in a chase.  Shortly thereafter, the defendant and his brother abandoned the truck and began running.  The police were able to apprehend both of them.  A search of the defendant yielded "a couple of $2 bills" and "a lot of hundreds" from his pocket.[3]  Among other stolen items retrieved from the pickup truck, the police found the victim's passport in the cab of the truck.[4]

---

[2] The description of the pickup truck, including the license plate, matched a pickup truck observed by police to have been driving slowly near the area of the victim's home in the early morning hours of July 21, 2019.

[3] The inventory of the cash seized from the defendant showed two $2 bills and twelve $100 bills.

[4] Other items stolen from the victim's home were found in the truck, including a Honda generator, a Dremel tool, a belt sander, gift cards, video games, jewelry, a collection of half dollar coins, and a prescription bottle.

4

Two days after the break-in, the victim discovered a backpack in his bedroom that he did not recognize. Inside, he found tools, including a screwdriver, and empty prescription pill bottles, one with the defendant's name on it and another with his brother's name.

The evidence amply supported the conclusion that the defendant was the driver of the pickup truck, aiding his brother in the breaking and entering. The day after the victim's home was broken into, the defendant was found driving a pickup truck full of items stolen from the victim's home. Additionally, his passenger was his brother, the person who broke into the victim's home. Moreover, the pickup truck had been observed near the area of the victim's home in the early morning hours of July 21, 2019, the same day that the victim's home security video showed a pickup truck picking up the defendant's brother in the early morning hours. Added to this was the defendant's flight after being confronted by police. As the trial judge found, significant evidence included the discovery of $2 bills and a number of $100 bills on the defendant himself.

The evidence thus sufficiently established the defendant as the driver-accomplice, a knowing and intentional participant in the breaking and entering with the intent to commit a larceny. See G. L. c. 266, § 16 (breaking and entering at night); G. L.

5

c. 274, § 2 (aiding and abetting). See also Commonwealth v. Zanetti, 454 Mass. 449, 467-468 (2009).

2. Prosecutor's closing argument. The defendant argues that the prosecutor's closing argument misstated the evidence concerning the money found in the defendant's pocket; but he failed to object to the statement at trial. We review unobjected-to statements during closing argument to determine whether they created a substantial risk of a miscarriage of justice. See Commonwealth v. Ferreira, 460 Mass. 781, 788 (2011) ("Where, as here, no objection was made at trial, we must determine whether the prosecutor's closing argument error resulted in a substantial risk of a miscarriage of justice").

Although closing arguments are not evidence, see Commonwealth v. Lester, 486 Mass. 239, 249 (2020), prosecutors may not misstate the evidence. See Commonwealth v. Carriere, 470 Mass. 1, 19 (2014). If there is a deviation from the evidence, its effect must be viewed in context of the entire argument, the evidence at trial, and the jury instructions. See Commonwealth v. Whitman, 453 Mass. 331, 343 (2009). In a jury-waived trial, like this one, the judge is expected to know the law and apply it correctly, see Commonwealth v. Healy, 452 Mass. 510, 514 (2008); for example, that the evidence, rather than characterizations of counsel in closing argument, should be relied on by the fact finder.

As to the money found on the defendant, the prosecutor stated in closing that

> "there were items found in this defendant's pocket that were specifically described by the named victim in this case; 12 $100 bills, there was no coincidence that there were 12 $100 bills found in this defendant's pocket, as well as two $2 bills. Another rare form of currency. The victim did specifically tell the Court there was something unique about those dollar bills and that's what [the officer] said. He couldn't remember exactly what it was, but there was something odd about these $2 bills."

While the number of $100 bills reported missing by the victim did not correspond exactly with the number found on the defendant and the officer did not specifically say that there was something unique or odd about the two $2 bills recovered,[5] the thrust of the prosecutor's argument was that there was a remarkable consistency between the description of the cash reported missing by the victim and that recovered from the defendant. That there were twelve $100 bills recovered when the victim estimated "maybe 9 or 10," and that there were two $2 bills recovered without mention of them being attached on a

---

[5] The missing cash was described by the victim as "maybe 9 or 10 $100 bills" and "two $2 bills on a single sheet that had not been cut." The inventory reflected twelve $100 bills and two $2 bills. An officer testified that there was "a lot of cash" recovered from the defendant's pocket, including "a lot of hundreds" and "a couple of $2 bills." Although he could not recall anything specific about the $2 bills, he did testify that "one or two bills . . . were like folded up."

7

single sheet, did not undermine the conclusion that the cash found on the defendant was likely that stolen from the victim.

Moreover, the cash on the defendant was not the only connection to the breaking and entering. As the judge mentioned in her findings, the defendant was found driving the truck used to aid his brother in the breaking and entering, and it still had in it the victim's stolen property. We do not view the judge's mention of the "number of $100 bills," and the "uniqueness of the $2 bills," as reliance on the prosecutor's characterization of this evidence, rather than the evidence itself. The general consistency of the cash stolen from the victim and the cash found on the defendant only added to the already overwhelming evidence of the defendant's guilt. We discern no risk that the outcome of the case would have been different if not for the prosecutor's comments in closing. See Commonwealth v. Dirgo, 474 Mass. 1012, 1016 (2016).

3. Withholding of potentially exculpatory evidence. After learning posttrial that a listed Commonwealth witness had been discharged for official misconduct, the defendant moved for a new trial on the basis of newly discovered evidence that the prosecution had withheld potentially exculpatory evidence. After hearing, the motion judge, who was also the trial judge, denied the motion. On appeal, the defendant argues that the judge had no discretion to deny the motion because he had

8

established prejudicial constitutional error.  See Commonwealth v. Brescia, 471 Mass. 381, 388-389 (2015).

We review the denial of a motion for new trial for significant error of law or other abuse of discretion.  See Commonwealth v. Hernandez, 481 Mass. 189, 195 (2019).  To succeed on a motion for new trial based on the prosecution's withholding of potentially exculpatory evidence, the defendant must establish that the evidence was exculpatory, that it was in the possession of the prosecution, and that he was prejudiced by the prosecution's withholding of the evidence.  See Commonwealth v. Caldwell, 487 Mass. 370, 375 (2021).  Here, there was no dispute that the evidence constituted exculpatory evidence in the possession of the prosecution.  The question at the hearing was whether the defendant was prejudiced.

As the judge found, the discharged officer's role in the investigation was limited, involving the incident at the Dunkin' Donuts.  He did not actually testify at trial; rather, the substance of his anticipated testimony came through another witness and a stipulation.  Although the officer did handle and document evidence, this evidence was initially witnessed by other officers who saw the stolen goods in the open truck bed and recovered cash from the defendant's pocket.  Given the other strong evidence of the defendant's guilt, we discern no risk that timely disclosure of the exculpatory evidence would have

altered the result.  See Commonwealth v. Ferreira, 481 Mass. 641, 650 (2019).  The judge was within her discretion in denying the motion on the basis that the defendant had failed to show prejudice.

Judgment affirmed.

Order denying motion for new
  trial affirmed.

By the Court (Desmond, Shin &
  Singh, JJ.[6]),

Assistant Clerk

Entered: June 20, 2024.

---

[6] The panelists are listed in order of seniority.