NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-445

COMMONWEALTH

vs.

BRYAN A. HENRY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was indicted and arraigned in the Superior Court for trafficking fentanyl with a net weight of more than ten grams.  See G. L. c. 94C, § 32E (c1/2).  He moved (1) to dismiss the indictment; (2) for a Franks v. Delaware, 438 U.S. 154, 155-156 (1978), hearing; and (3) to suppress evidence discovered pursuant to two search warrants.  The judge determined that the defendant had not demonstrated his entitlement to a Franks hearing and, after a nonevidentiary hearing, the judge denied the defendant's motions in a thoughtful written decision.  Later, before a different judge, the defendant tendered a conditional guilty plea to the lesser included offense of possession with the intent to distribute a

class A substance, and then filed this appeal challenging the motion judge's rulings. See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019) (rule 12 [b] [6]). We affirm.

Background. In July, August, and September 2022, the Massachusetts State police used a confidential informant (CI) to conduct four controlled buys of fentanyl from the defendant. On September 19, 2022, Massachusetts State trooper Williams Frais applied for two search warrants: one for the defendant's home, and one for a Toyota RAV4 that the State police saw the defendant drive to and from the controlled buys. Frais supported each search warrant application with his own affidavit.

In the affidavits, Frais averred that the CI set up each controlled buy by contacting a certain telephone number and, in each instance, after the CI called that telephone number, the defendant drove to the designated meeting place in the RAV4.[1] Frais also noted that the defendant was not the account holder for the telephone number Frais attributed to the defendant in

_____

[1] On two of those occasions, the State police surveilled the defendant as he drove the RAV4 directly from his home to the meeting with the CI, and as the defendant drove directly home after the meeting. In the two other instances, the State police saw the defendant drive to or from his home in the RAV4, but were unable to surveil him on both legs of the trips.

2

the affidavits; Frais opined that this was consistent with narcotics distributors' attempts to conceal their identities.

Based on these applications, a District Court clerk-magistrate issued the two search warrants on September 19, 2022, and the State police executed them that day. The search revealed suspected drugs -- notably, "a white powder substance" -- as well as drug paraphernalia and packaging materials, and a plastic bag containing $4,000 in cash. The State police also found a cellular telephone in the RAV4, but it was assigned a different number than the one listed in the affidavit. Frais subsequently learned from the State trooper coordinating with the CI that the CI was making controlled buys from two different people -- the defendant and another person -- during the same period, and the number Frais had included in the affidavit corresponded to the other target, not the defendant. On the date of the defendant's arraignment in September 2022, the prosecutor informed defense counsel of this error. Later, State Police trooper Matthew Morrisey prepared a supplemental police report explaining the mistaken attribution of the other suspect's telephone number to the defendant.

The prosecutor who presented the case to the grand jury presented Frais's testimony and copies of the search warrant returns. The prosecutor did not inform the grand jury about

3

Frais's inaccurate recitation of the defendant's telephone number in the search warrant affidavits, however. As we have noted, the grand jury indicted the defendant on the offense charged.

Discussion. 1. Conditional plea. Rule 12 (b) (6) provides, in relevant part, that:

> "[w]ith the written agreement of the prosecutor, the defendant may tender a plea of guilty or an admission to sufficient facts while reserving the right to appeal any ruling or rulings that would, if reversed, render the Commonwealth's case not viable on one or more charges. The written agreement must specify the ruling or rulings that may be appealed, and must state that reversal of the ruling or rulings would render the Commonwealth's case not viable on one or more specified charges."

The defendant's tender of plea in this case complied with most, but not all provisions of this rule. Specifically, although the plea agreement was written, it memorialized the terms of the plea, and it specified the rulings the defendant intended to appeal, it did not explicitly state that the rulings at issue "would, if reversed, render the Commonwealth's case not viable" on the indicted offense, nor did it state the lesser included offense to which the defendant pleaded guilty. Rule 12 (b) (6).

The parties agree, however, that reversal of the motion to dismiss would render the Commonwealth's case not viable. Furthermore, it is apparent on the record that, at a minimum, reversal of the order denying the defendant's motion to suppress

4

the evidence found in his home would be fatal to a prosecution for both the offense on which he was indicted, and the lesser included offense to which he pleaded guilty.  Where the defendant's conditional plea therefore satisfied the substantive requirements of the rule, we will not disturb it.  See Commonwealth v. Martell, 407 Mass. 288, 293 n.7 (1990) (application of rules of criminal procedure should not "exalt form over substance").

2.  Motion to dismiss the indictment.  a.  Standard of review.  Generally, "the adequacy or competency of evidence before a grand jury is not a matter for judicial inquiry." Commonwealth v. Hunt, 84 Mass. App. Ct. 643, 650 (2013), quoting Commonwealth v. Mayfield, 398 Mass. 615, 619-620 (1986).  Yet, "we will consider whether the evidence before the grand jury was sufficient to support a finding of probable cause[,] . . . and whether the defendant has shown that the integrity of the grand jury proceedings was impaired."  Hunt, supra at 650-651, quoting Mayfield, supra.  Our review of a judge's denial of a defendant's motion to dismiss on these grounds is de novo.[2]  See Commonwealth v. Barlow-Tucker, 493 Mass. 197, 204 (2024).

_____

[2] For this reason, we need not and do not address the defendant's argument that the motion judge's "finding" that the cell phone was discovered in the defendant's home, rather than in the RAV4, was clearly erroneous.

5

b.  Impairment of the grand jury.  The defendant argues that the indictment should be dismissed because the Commonwealth failed to inform the grand jury about the error Frais made in transcribing the defendant's telephone number in the applications for the two search warrants in this case, as well as in the supporting affidavits and the search warrants themselves.  We disagree.

"It is well settled that '[p]rosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury.'"  Commonwealth v. Reyes, 98 Mass. App. Ct. 797, 805 (2020), quoting Commonwealth v. Hernandez, 481 Mass. 189, 191, cert. denied, 140 S. Ct. 168 (2019).  Moreover, "the presentation of false or misleading evidence only requires the dismissal of an indictment where the evidence was presented with the knowledge that it was false, with the express purpose of obtaining an indictment, and 'probably influenced the grand jury's determination to hand up an indictment.'"  Reyes, supra, quoting Commonwealth v. Fernandes, 483 Mass. 1, 8 (2019).

Even if we were to assume that the Commonwealth acted with "reckless disregard of the truth" here by failing to inform the grand jurors that the warrant and application materials[3] included

---

[3] Neither the warrant nor the application materials were themselves presented to the grand jury.

6

an incorrect telephone number, we are not persuaded that the omission "probably influenced" the grand jury's decision to indict. Mayfield, 398 Mass. at 621. The defendant's telephone number was of no independent consequence in this case. Even if the grand jury knew Frais had an unfounded suspicion that the defendant was attempting to conceal his identity by using a cell phone not registered to him, given the genesis of the error, the effect of Frais's mistake on the grand jury's perception of his truthfulness would likely have been negligible; at worst, the grand jury might have concluded that Frais and the other trooper had been careless about a collateral detail. Cf. Commonwealth v. Hall, 485 Mass. 145, 157 (2020), quoting Commonwealth v. Connor, 392 Mass. 838, 854 (1984) (prosecutor obligated to alert grand jury to existence of evidence that "would greatly undermine the credibility of an important witness"). Furthermore, the grand jurors were presented with the search warrant return documenting the drugs, cash, and paraphernalia at issue in the indictment, and we consider it unlikely that the grand jury would have rejected this evidence based on Frais's attribution of an incorrect telephone number to the defendant. See Commonwealth v. Biasiucci, 60 Mass. App. Ct. 734, 738 (2004) (decision to uphold indictment "can rest on the simple ground that such exculpatory evidence as may be conceived to have

existed was not weighty enough to constitute a substantial challenge to the demonstration of probable cause, and, if laid before the grand jury, would almost certainly have left unaltered the disposition to indict").  Therefore, given the totality of the evidence presented to the grand jury, the defendant has failed to meet the "heavy burden" of showing impairment of the grand jury proceeding.  Reyes, 98 Mass. App. Ct. at 805, quoting Commonwealth v. LaVelle, 414 Mass. 146, 150 (1993).

c.  Scope of the appeal.  The defendant's briefing also includes challenges both to the adequacy of the evidence presented to the grand jury, and to the propriety of the prosecutor's answers to certain questions asked by the grand jurors, as bases for dismissing the indictment.  Because neither of these issues was raised in the motion to dismiss the indictment, however, the defendant's conditional plea did not preserve his right to argue them on appeal.  See rule 12 (b) (6) (conditional plea reserves right to appeal only from rulings specified in plea agreement).  We thus do not address them further.

3.  Motion to suppress evidence.  a.  Franks hearing.  A Franks hearing allows a defendant "to challenge the truthfulness of factual statements made in an affidavit supporting the

8

warrant" against them.  Commonwealth v. Dunn, 494 Mass. 42, 56 (2024), quoting Commonwealth v. Amral, 407 Mass. 511, 519 (1990).  Entitlement to such a hearing turns on the defendant's ability to make a "substantial preliminary showing." Dunn, supra, quoting Commonwealth v. Long, 454 Mass. 542, 552 (2009), S.C., 476 Mass. 526 (2017).  Specifically, the defendant must demonstrate that (1) in the affidavit supporting the search warrant, the "affiant either included a false statement or omitted material 'knowingly and intentionally, or with reckless disregard for the truth,'" Dunn, supra, quoting Commonwealth v. Andre, 484 Mass. 403, 407-408 (2020); and (2) "the false statement was necessary for the probable cause determination." Dunn, supra.  See Franks, 438 U.S. at 155-156.

As the troopers explained in the supplemental police reports here, before Frais prepared his affidavits, he obtained what he mistakenly believed was the defendant's telephone number from the State trooper who was managing the CI.  This belief was misplaced because the trooper, who was using the same CI to investigate another suspected drug dealer, obtained telephone numbers from the CI for both the defendant and the other suspect, and the trooper "mixed the two numbers up" while communicating the defendant's telephone number to Frais.

9

In this circumstance, Frais's use of the incorrect telephone number in the affidavit may have reflected negligence, but not an intentional misstatement or a "reckless disregard for the truth." Dunn, 494 Mass. at 56, quoting Andre, 484 Mass. at 407-408. Indeed, so far as the record reflects, Frais believed that he was using the correct number provided by the CI. See Commonwealth v. Filippidakis, 29 Mass. App. Ct. 679, 687 n.6 (1991) (standard for Franks hearing not met where "there is no material basis for impugning the good faith of the affiant").

Additionally, even if we were to conclude that the defendant showed that Frais acted recklessly with respect to the confusion about the defendant's telephone number, the defendant failed to establish that probable cause for the trafficking offense turned on that mistake. As discussed infra, there was ample probable cause to search the defendant's home and the RAV4 without the erroneous statement. We therefore discern no abuse of discretion or other error in the judge's determination that the defendant was not entitled to an evidentiary hearing to pursue those challenges. See Franks, 438 U.S. at 155-156; Dunn, 494 Mass. at 56.

b. Merits. Finally, we are not persuaded that the judge erred in denying the defendant's motion to suppress the evidence seized by the State police because (1) the affidavits supporting

10

the search warrants failed to satisfy the "veracity" prong of the Aguilar-Spinelli test as to the CI on whom the State police relied, see Aguilar v. Texas, 378 U.S. 108, 114-115 (1964); Spinelli v. United States, 393 U.S. 410, 415-416 (1969); (2) the affidavits failed to establish an adequate nexus between the defendant's drug distribution and his home; or (3) the affidavits failed to establish a timely nexus between the defendant's drug distribution and the RAV4.

The affidavits supporting the search warrants describe the CI's participation in four controlled buys. According to the affiant (Frais), in each instance, the CI called the defendant to arrange a purchase of fentanyl. Before the CI left to meet the defendant, the State police searched the CI to confirm that the CI had neither drugs nor money other than that provided by the State police for the purpose of the controlled buy. The State police then kept the CI under surveillance as the CI traveled to the designated meeting place and bought fentanyl from the defendant; after the purchase, the State police followed the CI back to an agreed meeting place where the CI gave them the fentanyl. This account of the CI's participation in a series of controlled buys of fentanyl was adequate to establish the CI's veracity under the relevant test. See Commonwealth v. Villella, 39 Mass. App. Ct. 426, 427-428 (1995).

11

Additionally, where Frais averred that the State police watched the defendant leave his home and drive directly to and from two of the controlled buys, and saw him going either to or from his home for the other two controlled buys, the affidavits established the required nexus between the defendant's home and his drug distribution.  See Commonwealth v. Young, 77 Mass. App. Ct. 381, 386-387 (2010); Commonwealth v. DiStefano, 22 Mass. App. Ct. 535, 540-541 (1986).  See also Commonwealth v. Hayes, 102 Mass. App. Ct. 455, 462 (2023) (search warrant affidavit "need not show that evidence more likely than not will be found; it must provide merely that quantum of evidence from which the magistrate can conclude, applying common experience and reasonable inferences, that items relevant to apprehension or conviction are reasonably likely to be found at the location" [quotations and citation omitted]).  Likewise, where the affidavits described both the defendant's ongoing participation in drug sales to the CI over a period of three months, and the defendant's consistent use of the RAV4 when conducting the drug sales, they established the necessary nexus between the RAV4 and the drugs.  See Commonwealth v. Defrancesco, 99 Mass. App. Ct. 208, 212-213 (2021).  The four-day delay between the last controlled buy and the execution of the search warrant for that vehicle also did not render the information in the affidavit

12

stale.  See Commonwealth v. Murphy, 95 Mass. App. Ct. 504, 511 (2019) (information in affidavit "timely" for purposes of ongoing criminal enterprise where it permitted reasonable person to believe evidence of crime would be present when warrant was obtained and executed).  There was therefore no error in the judge's denial of the defendant's motion to suppress the evidence the State police obtained using the search warrants.

Order denying motion to
  dismiss indictment, and
  order denying motion to
  suppress evidence,
  affirmed.

By the Court (Ditkoff, Hand &
  Walsh, JJ.[4]),

Clerk

Entered:  May 2, 2025.

_____

[4] The panelists are listed in order of seniority.

13